IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| James F. Spires, ) | |
| ) | Civil Action No. 8:04-970-DCN-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on January 16, 2001, alleging that he became unable to work on July 19, 1998. The application was denied initially and on reconsideration by the Social Security Administration. On December 12, 2001, the plaintiff requested a hearing. The administrative law judge, before

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

whom the plaintiff and his attorney appeared, considered the case *de novo*, and on May 28, 2003, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on January 22, 2004. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31,1999.
>
> (2)   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).
>
> (4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).
>
> (7)   The claimant has the residual functional capacity for sedentary work.
>
> (8)   The claimant's past relevant work as a Consultant for the Dept. of Corrections did not require the performance of work-related activities precluded by his residual functional capacity prior to his date last insured of December 31, 1999 (20 CFR § 404.1565).

> (9) The claimant's medically determinable coronary artery disease and depression do not prevent the claimant from performing his past relevant work.
>
> (10) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(e)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658

F.2d 260 (4th Cir. 1981). In addition, a claimant has the burden of establishing that his disability existed prior to the date he was last insured under the regulations. *See Casey v. Sullivan*, 3 F.3d 75 (4th Cir. 1993); *Stawls v. Califano*, 596 F.2d 1209 (4th Cir. 1979).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

>preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff alleges that the ALJ erred in finding that there was not substantial evidence to establish that he was disabled as of the date he was last insured ("DLI"), December 31, 1999.

The plaintiff, 64 years old at the time of the ALJ's decision, alleges disability based upon, *inter alia*, hypertension, hydrocephalus, dementia, depression, and memory problems. His most recent prior work experience was as a consultant for the Department of Corrections. Both parties agree that the date he was last insured was December 31, 1999.

The ALJ found that the evidence in the record showed that "the majority of the claimant's impairments did not exist prior to his DLI" (Tr. 17). The ALJ found that the plaintiff could have had coronary artery disease before his DLI, even though his symptoms were not manifested until after his DLI, but that because his prior job as a consultant was sedentary in nature he could have still performed this past relevant job prior to his DLI.[2] With regard to the plaintiff's dementia and depression, the ALJ stated:

>The record shows that the claimant was diagnosed with possible dementia and has a history of depression. The

---

[2] No testimony was taken from a vocational expert on this issue.

5

>   dementia did not manifest itself until at least January 2000 and it was finally determined that the claimant was suffering from normal pressure hydrocephalus. Surgical placement of a shunt was performed in January 2001. However, the claimant suffered post surgical delirium and a second shunt procedure was performed several months later. It is not clear whether the claimant's current mental problems (confusion and poor memory) are due to the hydrocephalus or dementia. However, the record clearly shows that these problems did not occur until after December, 1999, the claimant's DLI.
>
>   As stated earlier, the claimant does have a history of depression that extends beyond the period prior to the claimant's DLI. The record shows that the claimant was seeing a Dr. Snackenberg (a psychiatrist or psychologist) for several years. The file contains treatment notes by Dr. Snackenberg going back to June 1994. These notes are handwritten and hard to decipher. From what can be read, the notes do not appear to contain objective information such as the claimant's mental status. Instead they more or less relate what was on the claimant's mind at the time of each session. Even when the claimant was undergoing electro-convulsive therapy in May and June 1999 for depression, Dr. Snackenberg's notes fail to mention that the claimant was undergoing this treatment. Dr. Snackenberg saw the claimant in November 1997, at which time the claimant was complaining of insomnia. The next time he saw the claimant was on May 19, 1999. The treatment note on that day related that the claimant "thinks about dying all the time" which suggests a significant level of depression, but the treatment note contains no such diagnosis or any observations of the claimant. However, by July 19, 1999, the claimant reported that his "anxiety" was better. The remaining treatment notes continue to contain only a recording of the claimant's complaints, which were as much physical as mental, as well as some of the medications he was taking.

(Tr. 18).

Finally, the ALJ acknowledged a letter from Dr. William Dunovant, the plaintiff's treating physician, which details the plaintiff's physical and mental history and his current condition. The ALJ concurred with Dr. Dunovant's assessment of the plaintiff's current "significant physical and mental impairments that would in all likelihood preclude substantial gainful activity," but finds that "the record does not reflect that these conditions

existed or reached a disabling level of severity on or before the claimant's DLI of December 31, 1999." (Tr. 18).

On appeal, the Appeals Council considered additional evidence submitted by the plaintiff which consisted of medical records and a letter from the plaintiff's wife to her congressman in which she outlines the plaintiff's medical history, his employment, and his current condition. In the letter, Mrs. Spires indicates that the plaintiff had recently been diagnosed with Pick's Disease, a rare form of dementia which is progressive. She also disputes the ALJ's finding that the plaintiff's last job, which involved travel and frequent overnight stays, was sedentary. Mrs. Spires also claims that she was not allowed to testify at the hearing.

Additionally, the Appeals Council considered a letter from Dr. J. E. Carnes, the plaintiff's treating neurologist, dated August 20, 2003. This letter was written during the plaintiff's hospitalization in 2003 when, according to the letter from Mrs. Spires, the plaintiff was diagnosed with Pick's Disease. Dr. Carnes wrote:

> Fred Spires has been a patient I have seen intermittently over many years for a number of problems. The patient did have brain surgery and it was hoped that this would help many of his neurological problems and I have really not seen the patient personally in well over a year until this week. I was asked to see him while he was hospitalized at Palmetto Health Baptist and at that time Mr. Spires was found to have a severely deteriorated mental condition. In my opinion, the patient, at this juncture, has a dementia that is uncurable [sic] and will be progressive. Although his previous surgery did appear to help his walking, the patient has had a severe intellectual decline since I have last seen him. I personally do not see any way this patient could have gainful employment with his current intellectual function, and, unfortunately, at this juncture I really feel there is little hope that his condition will stabilize or improve.

(Tr. 491).

In its decision, the Appeals Council indicated that it considered the arguments and additional evidence submitted by the plaintiff, "but concluded that neither the

7

contentions nor the additional evidence provide a basis for changing the Administrative Law Judge's decision" (Tr. 7).

The issue in this case is simply whether there is substantial evidence to support the ALJ's determination that the plaintiff is not entitled to disability benefits because he did not establish that, prior to December 31, 1999, the date he was last insured, he suffered a disability severe enough to preclude him from engaging in any substantial gainful activity. The ALJ found that there was not sufficient pre-DLI evidence.

The record clearly shows that the plaintiff suffers from dementia. What is less clear is whether the plaintiff was conclusively disabled on the date he was last insured. Assuming, however, that dementia, and specifically Pick's Disease, is progressive in nature, proof that the plaintiff was disabled after December 31, 1999, is at least probative, though not conclusive, of the fact that he may have been disabled prior to December 31, 1999. Indeed, the record contains extensive information documenting the plaintiff's mental health problems from the date of his hearing back to at least 1994 (Tr. 214-220; 243). There are medical reports of mental health professionals in early 1999 detailing his condition and indicating that he had sought treatment from them in the past. The letter from the plaintiff's wife, together with other documents, indicates that as early as 1987 the plaintiff was having health problems, including being diagnosed, apparently mistakenly, with multiple sclerosis (MS). This diagnosis and the symptoms engendering it, resulted in the plaintiff requiring accommodation in his employment and considering early retirement in 1987[3] (Tr. 488).

Based on the foregoing evidence, the ALJ's decision finding that the plaintiff was not disabled prior to December 31, 1999, is not supported by substantial evidence. The plaintiff concedes however, that "the record does not contain medical evidence supporting a disability prior to [the plaintiff's] date last insured." The plaintiff argues that the

---

[3]Included in the additional evidence is a letter from Dr. Robert Mallin, dated September 30, 1987, indicating a probable diagnosis of MS and noting the progressive and variable nature of the disease (Tr. 488).

8

record documents his longstanding mental problems, together with physical problems which have existed for a long period of time. Moreover, the plaintiff argues that his deteriorating mental status supports the conclusion that he could not be relied upon to accurately portray past events.

Under these circumstances, and in light of the additional evidence submitted, but not specifically addressed, at the Appeals Council level, this court finds that a remand is proper. On remand, the ALJ is directed to reconsider the case in light of the additional evidence. Specifically, the ALJ is directed to consider the progressive nature of the plaintiff's impairment and the pre-DLI evidence. On remand, both parties should be afforded the opportunity to submit further evidence on the issue of whether the plaintiff was disabled on December 31, 1999.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes the case should be reversed and remanded. Therefore, it is recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent with this opinion. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

> s/Bruce H. Hendricks
> United States Magistrate Judge

April 29, 2005

Greenville, South Carolina